1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6   DEANDRE ALLEN HAWKINS,                    3:13-cv-00299-MMD-WGC

7                           Plaintiff,        **REPORT & RECOMMENDATION OF**
                                              **U.S. MAGISTRATE JUDGE**
8        v.

9   CAROLYN W. COLVIN,
    Acting Commissioner of Social Security,
10
                            Defendant.
11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14   28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff

15   Deandre Allen Hawkins' Motion for Remand/Reversal. (Doc. # 11.)[1] Defendant Commissioner

16   filed an Opposition (Doc. # 15) and Cross-Motion for Summary Judgment (Doc. # 16)[2]. Plaintiff

17   filed a reply in support of his motion (Doc. # 17) and opposition to the Commissioner's cross-

18   motion (Doc. # 18).[3] After a thorough review, the court recommends that Plaintiff's motion be

19   granted, and the Commissioner's motion be denied, and that the case be remanded to the ALJ for

20   development of the record.

21                                     **I. BACKGROUND**

22          On January 7, 2010, Plaintiff filed an application for Title XVI Supplemental Security

23   Income (SSI) benefits, alleging an onset of disability beginning August 1, 2006. (Administrative

24   Record (AR) 164-170.)

25          The Commissioner denied the application initially and on reconsideration. (AR 95-98,

26   ────────────────────

27   [1] Refers to court's docket number.

28   [2] Docs. # 15 and # 16 are identical, but were docketed separately by the Clerk's Office.

    [3] Docs. # 17 and # 18 are identical, but were docketed separately by the Clerk's Office.

105-107.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ) to challenge the Commissioner's determination, and appeared at a hearing before the ALJ on March 20, 2012. (AR 17-33.) Plaintiff was represented by counsel at the hearing. (AR 17-33.)

The ALJ followed the give-step sequential process for evaluating such claims and issued a written decision on May 10, 2012, finding Plaintiff was not disabled pursuant to the Social Security Act. (AR 17-33.) Plaintiff appealed and the Appeals Council denied review. (AR 1-5.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision to the District Court. (Doc. # 11.) Plaintiff argues: (1) the alternate jobs the ALJ found existed in the national economy at step five exceed Plaintiff's Residual Functional Capacity as determined by the ALJ; (2) the ALJ gave the opinions of Dr. Wildman, Plaintiff's non-treating, examining psychologist, "significant weight," but then rejected portions of Dr. Wildman's opinions without setting forth legally sufficient reasons; (3) the ALJ did not allow Plaintiff's legal representative to complete his cross-examination of the vocational expert (VE) regarding the number of jobs in the national economy.

The Commissioner opposes Plaintiff's motion and has also filed a cross-motion for summary judgment. (Docs. # 15, # 16.) The Commissioner argues: (1) substantial evidence supports the ALJ's reliance on the VE's testimony that Plaintiff could perform other work in the national economy; (2) substantial evidence, including treatment records and the various medical sources' opinions and findings supported the ALJ's conclusions that mentally, Plaintiff had the RFC to understand, remember and carry out simple, routine and repetitive tasks and the ALJ rationally interpreted Dr. Wildman's opinions; and (3) the ALJ properly exercised her discretion in limiting Plaintiff's legal representative's cross-examination of the VE. (Docs. # 15, # 16.)

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

1   24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

2          To determine whether substantial evidence exists, the court must look at the record as a

3   whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

4   740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

5   not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

6   --- F.3d --- , 2014 WL 3397218, at * 11 (9th Cir. July 14, 2014) (quoting *Lingenfelter v. Astrue*,

7   504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility,

8   resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v.*

9   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either

10  affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the

11  Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21

12  (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set

13  aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec.*

14  *Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir.

15  2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability

16  determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*,

17  --- F.3d --- , 2014 WL 3397218, at * 11 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

18  2003)).

19                                  **III. DISCUSSION**

20  **A. Five-Step Sequential Process**

21          Under the Social Security Act, "disability" is the inability to engage "in any substantial

22  gainful activity by reason of any medically determinable physical or mental impairment which

23  can be expected to result in death or which has lasted or can be expected to last for a continuous

24  period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined

25  to be under a disability only if his physical or mental impairment or impairments are of such

26  severity that he is not only unable to do his previous work but cannot, considering his age,

27  education, and work experience, engage in any other kind of substantial gainful work which

28  exists in the national economy, regardless of whether such work exists in the immediate area in

1    which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if

2    he applied for work." 42 U.S.C. §  1382c(a)(3)(b).

3         The Commissioner has established a five-step sequential process for determining whether

4    a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

5    137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding

6    of disability or nondisability, a determination will be made and the SSA will not further review

7    the claim. 20 C.F.R. §  404.1520(a)(4) and §  416.920(a)(4); *see also Barnhart v. Thomas*, 540

8    U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts

9    to the Commissioner at step five.'" *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 13 (quoting

10   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

11        In the first step, the Commissioner determines whether the claimant is engaged in

12   "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

13   20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant

14   is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

15        The second step requires the Commissioner to determine whether the claimant's

16   impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

17   § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

18   the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are

19   "the abilities and aptitudes necessary to do most jobs[,]" which include:

20   > (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
     > reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking;
21   > (3) Understanding, carrying out, and remembering simple instructions; (4) Use of
     > judgment; (5) Responding appropriately to supervision, co-workers and usual
22   > work situations; and (6) Dealing with changes in a routine work setting.

23   20 C.F.R. §  404.1521 and §  416.921. If a claimant's impairment is so slight that it causes no

24   more than minimal functional limitations, the Commissioner will find that the claimant is not

25   disabled. 20 C.F.R.§  404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner

26   finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

27        In the third step, the Commissioner looks at a number of specific impairments listed in 20

28   C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

- 4 -

impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,

a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The Commissioner may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to

significantly limit the range of work permitted by his exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotation marks and citation omitted).[4] Further, where the Commissioner finds that a nonexertional limitation alone is severe (at step two of the sequential process) (absent any exertional limitation), the Commissioner is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitations are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If the ALJ relies on a vocational expert, he can call upon the vocational expert to testify as to: "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy.'" *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 13 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (alteration original)). "The ALJ may pose hypothetical questions to the expert that 'set out all of the claimant's impairments' for the VE's consideration." *Id*. (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). "'The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record.'" *Id*. (quoting *Tackett*, 180 F.3d at 1101). "The testimony of a [VE] is valuable only to the extent that it is supported by medical evidence' and has 'no evidentiary value if the assumptions in the hypothetical are not supported by the record.'" *Id*. (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

**1. Step One**

In the present case, the ALJ applied the five-step sequential evaluation process and

---

[4] "[S]atisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai*, 499 F.3d at 1076.

found, at step one, that Plaintiff had not engaged in substantial gainful activity since January 7, 2010, the date of his application. (AR 22.)

**2. Step Two**

At step two, the ALJ found it was established that Plaintiff suffered from the following severe impairments: diabetes, left foot pain of unknown etiology, mild tendinosis and moderate degenerative changes of the left shoulder, dysthymic disorder, and alcohol and cannabis abuse in reported remission. (AR 22.)

**3. Step Three**

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 22-23.)

**4. Step Four**

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with a sit/stand option at-will; no repetitive overhead lifting; no hazards including working at heights or operating dangerous/moving machinery; and understanding, remembering and carrying out no more than simple, routine, repetitive tasks. (AR 23.)

In making this determination, the ALJ stated that she considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence, and also considered opinion evidence. (AR 23.)

First, the ALJ recounted Plaintiff's allegations of disability, stating that he alleged disability based on diabetes, high cholesterol and headaches and experienced pain in his legs, neuropathy in his legs, hips and feet and poor circulation in his feet. He reported functional problems including difficulty lifting, standing, reaching, walking, kneeling as well as problems with his memory, concentration, completing tasks, understanding and following instructions. (AR 24.)

Next, the ALJ pointed out that despite these allegations, his application and objective evidence demonstrated that he could take care of his personal needs (he lives alone, goes out

- 8 -

alone, drives a car, goes shopping without incident, uses public transportation and handles his own money, and watches television daily). (AR 24.) He completed ninth grade, and it was noted he may have been in special education classes. (AR 24.)

She found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but found his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC determination. (AR 24.)

The ALJ then went on to detail the objective medical evidence. (AR 24-25.) She stated that the Social Security Administrative requested a consultative neurological examination in December 2010 and discussed the examiner's opinion that there was no definitive neurological etiology or diagnosis to explain claimant's reports of foot pain. (AR 25.)

She pointed out that the first State agency medical consultant concluded Plaintiff was limited to a medium exertional level. (AR 25.) Upon the review of additional evidence, however, a State agency medical consultant concluded Plaintiff was limited to the sedentary exertional level with an assistive device for ambulation and some manipulative limitations in the upper extremities. (AR 25.) The ALJ gave this more recent opinion greater weight. (AR 25.) Overall, the ALJ found that a sedentary exertional level with a sit stand option at -will is supported by the record, resolving doubt in favor of Plaintiff's subjective complaints. (AR 25.) She did not find, however, that the record supported the need for an assistive device for ambulation, stating that the sit stand option should be sufficient. (AR 25.)

The ALJ then acknowledged Plaintiff's complaints of left shoulder pain and noted that a November 2011 MRI indicated mild tendinosis and moderate degenerative changes. (AR 25.) She referenced an April 2012 medical source statement from Plaintiff's examining orthopedist who limited Plaintiff to a sedentary exertional level with some limited manipulative movement and limited exposure to hazards. (AR 25.) She accorded "some weight" to this opinion because it was fairly consistent with the internal findings, and found this opinion warranted a limitation to no repetitive overhead lifting. (AR 25.)

Next, the ALJ addressed Plaintiff's alleged mental impairments. (AR 25-26.) Regarding

his alleged impairment of depression, she noted that the objective evidence included no medication, no outpatient treatment or psychiatric hospitalizations. (AR 25.) As a result, the Social Security Administration requested a consultative psychological examination in May 2010, which was conducted by non-treating, consultative examining psychologist, Dr. Wildman. (AR 25.) Plaintiff denied a history of mental health treatment and denied special education. (AR 25.) The ALJ stated that Plaintiff reported no significant problems with daily activities and reported he had a driver's license for many years. (AR 25.) Dr. Wildman noted IQ scores in the borderline intellectual functioning range, but also stated the scores could be a possible side effect of his reported history of substance abuse and/or a general lack of effort during the examination. (AR 25-26.)  In addition, the scores were not in line with his relatively independent daily activities and lack of a history of deficits of adaptive functioning. (AR 26.) As a result, the ALJ did not find Plaintiff's IQ scores were valid as required for listing 12.05. (AR 26.)

The ALJ stated that Dr. Wildman concluded that Plaintiff had the cognitive ability for simple tasks with commensurate limitations in concentration, persistence, pace, but no social functioning limitations. (AR 26.)

The ALJ then discussed that State agency psychologists reviewed the limited mental health record (consisting of Dr. Wildman's evaluation and opinions) and concluded Plaintiff was capable of simple tasks on a sustained basis with no limitations on interacting with others. (AR 26.) The ALJ gave these opinions significant weight because they were internally supported with clinical findings from Dr. Wildman's examination and were generally consistent with the overall evidence including Plaintiff's self-reports of daily functioning. (AR 26.) As such, the ALJ concluded that the objective medical evidence did not support any additional limitations. (AR 26.)

The ALJ also determined that Plaintiff is unable to perform any past relevant work. (AR 26.)

**5. Step Five**

Finally, at step five, the ALJ discussed whether jobs exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience and RFC.

(AR 26-27.) The ALJ noted that on the date his application was filed, Plaintiff was thirty-eight years old, which the regulations define as "younger age" (18-49). (AR 26.) The ALJ also indicated Plaintiff had limited education, and that transferability of job skills was not material to the determination. (AR 26.) The ALJ consulted the VE in determining whether jobs exist in the national economy given Plaintiff's age, education, work experience, and RFC, including the additional limitations noted in the RFC determination above. (AR 27.) The VE testified that Plaintiff could perform the requirements of the job of surveillance system monitor, Dictionary of Occupational Titles (DOT) 379.367-010, which has a sedentary exertional level and skill level of "unskilled, SVP 2." (AR 27.) The VE testified there were 19,000 of these jobs available nationally. (AR 27.) In addition, the VE testified that Plaintiff could perform the requirements of the job of telephone quotation clerk, DOT 237.367-046, which also has a sedentary exertional level and "unskilled, SVP 2" skill level. (AR 27.) The VE testified there were 40,000 of these jobs available in the national economy. (AR 27.)

As such, the ALJ found Plaintiff was not disabled under the Social Security Act. (AR 27.)

**C. Did the ALJ Err by Failing to Ask Whether there was a Conflict between the VE's Testimony and the DOT and by Failing to Obtain an Explanation of the Apparent Conflict?**

**1. Background**

The ALJ limited Plaintiff to "understanding, remembering, and carrying out no more than simple, routine, repetitive tasks." (AR 23.) Then, relying on the VE's testimony, the ALJ found Plaintiff capable of performing the positions of a surveillance system monitor and telephone quotation clerk, both of which involve a skill level of "unskilled, SVP 2." (AR 27.)  Both are sedentary positions. (AR 27.) SVP is "specific vocational preparation level" and is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C, II, 1991 WL 688702. SVP level 1 requires a short demonstration only while SVP level 2 requires anything beyond short demonstration up to and including one month. *Id.*

### 2. Plaintiff's Argument

Plaintiff argues that these jobs exceed Plaintiff's RFC. (Doc. # 11 at 14.)  He contends that the SVP level indicated in the DOT listing for these jobs does not address whether the job entails only simple tasks. (*Id.*, citing *Works v. Commissioner*, 804 F.Supp.2d 1089, 1095 (D. Or. 2011) (citation omitted).) Instead, Plaintiff contends that whether a job involves only simple tasks is better determined by looking at the DOT's General Educational Development (GED) ratings. (*Id.*) He contends that a limitation to simple tasks is not necessarily consistent with an SVP of 2; rather, GED levels 1 and 2 encompass simple, routine work tasks. (*Id.*, citing *Works*, 804 F.Supp.2d at 1095 (citations omitted).) The GED reasoning levels for the surveillance system monitor job and telephone quotation clerk job are both at level 3.  (Doc. # 11 at 14.) Therefore, Plaintiff contends that these jobs exceed the RFC limitation to simple tasks assigned by the ALJ. (*Id.*) As such, Plaintiff contends the court should remand the matter for the payment of benefits. (*Id.* at 15.)

### 3. The Commissioner's Argument

The Commissioner argues that substantial evidence supports the ALJ's reliance on the VE testimony that Plaintiff could perform other work, and therefore, the ALJ properly determined Plaintiff was not disabled. (Docs. # 15/16 at 3, 4.) The Commissioner contends that at the hearing, the ALJ posed a hypothetical question to the VE that included a description of Plaintiff's limitations, and in response the VE testified that an individual with Plaintiff's age, education, work experience, and the stated limitations could perform the surveillance system monitor and telephone quotation clerk jobs. (*Id.* at 4.) The Commissioner asserts that the ALJ may take administrative notice of job information provided by a VE, and the VE's expertise provides the necessary foundation for his or her testimony. (*Id.*) In addition, if there is a conflict between the VE's testimony and the DOT, "neither the DOT nor the VE or VS evidence automatically 'trumps'." (*Id.* (quoting Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at * 2)). It is the ALJ who must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT information. (*Id.*)

The Commissioner contends, however, that the VE's testimony and the DOT jobs were consistent, because both jobs are unskilled and require a SVP level of 2, or learning time of up to and including one month. (*Id*.) The Commissioner argues that there is nothing in the DOT description of these jobs indicating they require anything more than simple, routine and repetitive tasks; instead, both descriptions involve "repetitive or short-cycle work" of tasks including observing television screens, pushing buttons, adjusting monitor controls, and answering and relaying phone calls. (*Id*.)

The Commissioner also argues that the limitation to simple, routine and repetitive tasks is consistent with the surveillance monitor and telephone quotation clerk jobs requirement of GED level 3 reasoning, which involves: "[a]pply[ing] commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form;" and "[d]eal[ing] with problems involving several concrete variables in or from standardized situations." (*Id*.)

The Commissioner cites to another district court opinion upholding reliance on VE testimony for a claimant limited to simple work where the VE testified that the claimant could perform a particular job despite requiring reasoning level 3 under the DOT. (*Id*. at 6, citing *Bordbar v. Astrue*, No. 10-02095-VBK, 2011 WL 486540, at * 2 (C.D. Cal. 2011). The Commissioner also relies on *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984-85 (C.D. Cal. 2005), which states that where the plaintiff is found capable of performing simple tasks at a routine pace, it was not error for the ALJ to find she could perform jobs requiring a higher reasoning level. (*Id*.)

Next, the Commissioner argues that substantial evidence supported the ALJ's decision that Plaintiff was not precluded from performing the jobs with a GED reasoning level of 3. (*Id*. at 7.) The Commissioner points out to various findings by Dr. Wildman, and says the ALJ properly interpreted these findings as indicating Plaintiff could perform unskilled jobs with GED reasoning level 3. (*Id*.) The Commissioner also looks to the findings of non-examining, consultative psychologists, Dr. Roldan and Dr. Kotler, who concluded Plaintiff was capable of simple tasks on a sustained basis. (*Id*. at 8.)

Finally, the Commissioner contends that the ALJ reasonably relied on the VE's opinion

1   where the VE had the benefit of hearing Plaintiff's testimony. (*Id*.)

2         **4. Plaintiff's Reply**

3         Plaintiff argues that the Commissioner erroneously equates the *job duties* required under

4   the DOT with the *reasoning level* required to perform those job duties, and conflates the specific

5   vocational preparation with whether a job "entails" simple tasks. (Docs. # 17/18 at 3.)  Thus,

6   Plaintiff contends the Commissioner has ignored the conflict between the VE's testimony and the

7   DOT regarding the specific limitations determined by the ALJ. (*Id*.)

8         Plaintiff acknowledges that the ALJ can rely on VE testimony to meet her burden at step

9   five; however, as the Commissioner pointed out, when there is an apparent conflict between the

10   DOT and the VE testimony, neither automatically trumps. (*Id*.) Plaintiff contends that the

11   majority of district court cases to address the issue within the Ninth Circuit weigh in favor of

12   Plaintiff's interpretation.

13         Confronting the Commissioner's reliance on the *Bordbar* case, Plaintiff distinguishes the

14   cases, stating that in *Bordbar*, the ALJ specifically found that the medical opinions in the case

15   were reasonable and the psychiatric consultative examiner in that case concluded that the

16   plaintiff could perform "detailed and complex" instructions. (*Id*. at 4.) Based on this, the court in

17   *Bordbar* said it was not fair to infer that the ALJ intended to assess Plaintiff as having a

18   maximum reasoning level of 1. (*Id*.) Here, Plaintiff argues that the ALJ noted that both

19   Dr. Wildman and the State agency psychological consultants concluded Plaintiff was capable of

20   only simple tasks on a sustained basis; however, Dr. Wildman's report stated that Plaintiff was

21   "potentially capable of understanding, remembering and carrying out a limited array of simple

22   instructions." (*Id*.) The ALJ did not identify any particular GED reasoning level in her RFC

23   determination, but Plaintiff asserts that substantial evidence in the record did not indicate a

24   higher level of reasoning than that found by the ALJ. In *Bordbar*, the court had evidence that

25   supported a finding that the plaintiff could perform jobs at a higher reasoning level, but that

26   evidence does not exist in this case.

27         Plaintiff claims that most courts to address the issue within this circuit have concluded

28   that a reasoning level of 3 is not consistent with "simple, repetitive" tasks. (*Id*. at 5.) In addition,

1   *Bordbar* pointed to four cases where it was concluded that "simple" tasks involve reasoning

2   levels of 1 or 2. (*Id.*)

3          Finally, Plaintiff points to *Meissl* and says it supports his argument that the ALJ's

4   limitation in this case required a reasoning level of 1 or 2, but both occupations listed by the VE

5   had a reasoning level of 3, and therefore, exceeded Plaintiff's RFC.

6          Plaintiff requests that the case be remanded for an award of benefits, or alternatively, that

7   it be remanded to the ALJ to resolve the apparent conflict between the VE testimony and the

8   DOT.

9          **5. Analysis**

10         Plaintiff contends that the ALJ erred at step five of the sequential evaluation process by

11   finding Plaintiff could perform other work in the national economy—as a surveillance system

12   monitor and telephone quotation clerk—which are sedentary and unskilled jobs with an SVP of

13   2. Plaintiff argues that these jobs, which have a GED reasoning level of 3, exceed Plaintiff's

14   RFC, which limited her to understanding, remembering and carrying out no more than simple,

15   routine, repetitive tasks.

16         "In making disability determinations, the Social Security Administration relies primarily

17   on the [DOT] for 'information about the requirements of work in the national economy.'"

18   *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p at * 2). "The Social

19   Security Administration also uses testimony from [VEs] to obtain occupational evidence." *Id*.

20   "Although evidence provided by a [VE] 'generally should be consistent' with the [DOT],

21   '[n]either the DOT nor the VE...evidence automatically "trumps" when there is a conflict.'" *Id*.

22   "Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then

23   determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists

24   for relying on the expert rather than the [DOT]." *Id*.  "[A]n ALJ may rely on expert testimony

25   which contradicts the DOT, but only insofar as the record contains persuasive evidence to

26   support the deviation.'" *Id*. at 1153 (citation omitted).

27         Plaintiff is correct that a majority of district courts within the Ninth Circuit that have

28   addressed the issue have found that the SVP level in a DOT listing indicating unskilled work

does not address whether or not the job entails only simple tasks. *See, e.g., Baker v. Comm'r of Soc. Sec.,* No. 1:13-cv-01350-SAB, 2014 WL 3615497, at * 7 (E.D. Cal. July 21, 2014); *Trujullo v. Colvin,* No. 3:13-cv-0620-SI, 2014 WL 2213218, at *5 (D. Or. May 27, 2014); *Works v. Comm'r of Soc. Sec. Admin.,* 804 F.Supp.2d 1089 (D. Or. 2011) (citing *Rose v. Astrue*, 2010 WL 358456, at * 4 (W.D. Wash. Aug. 11, 2010)); *Stroda v. Astrue*, No. C09-5112BHS, 2010 WL 129814 (W.D. Wash. Jan. 11, 2010); *Xiong v. Commissioner of Social Security*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, at * 6 (E.D. Cal. July 22, 2010); *Meissl v. Barnhart,* 403 F.Supp.2d 981, 983 (C.D. Cal. May 25, 2005) (citing *Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir. 1997)).

These courts have found that whether a job involves simple tasks is more readily determined by the DOT's GED ratings. *Id.* This is because "[a] job's SVP is focused on 'the amount of lapsed time' it takes for a typical worker to learn the job's duties" while "[a] job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves." *Meissl*, 403 F.Supp.2d at 983 (citing DOT at 1009).

The Social Security regulations contain only two categories regarding the ability to understand and remember instructions: "short and simple" or "detailed or complex." 20 C.F.R. § 416.969a(c)(1)(iii); 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks.") The job descriptions in the DOT include a "definitional trailer" that uses a numerical system to identify the abilities a person needs to perform the given job. *See* DOT Appendix C at 1991 WL 688702. The DOT's GED is broken down into the categories of reasoning development, mathematical development and language development. *See* DOT, Appendix C III, 1991 WL 688702 (Jan. 1, 2008). The limitation at issue (ability to understand and remember) here falls within the reasoning development division. The DOT has six levels within the GED reasoning development category to measure the ability to understand and remember. *Id*. Level 1 is described as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id*. Level 2 is described as the

- 16 -

ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*. Level 3 is described as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concreate variables in or from standardized situations." *Id*. For purposes of the court's analysis, it is not necessary to discuss levels four through six. Suffice it to say that "[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine." *Meissl*, 403 F.Supp.2d at 983.

The wording used to describe the DOT reasoning levels does not necessarily correspond directly to the functional limitations defined by the Social Security Administration regulations. *See Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-84 (C.D. Cal. 2005). Neither the Supreme Court nor the Ninth Circuit have expressed an opinion on this issue; however, the consensus of district courts to address it in the Ninth Circuit appears to be that a plaintiff's RFC limitation to  simple job instructions must  be reconciled with the reasoning levels of the jobs the VE testifies the plaintiff can perform in the national economy. *Xiong v. Commissioner of Social Security*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, at * 6 (E.D. Cal. July 22, 2010) (canvasing cases); *see also* Soc. Sec. Ruling (SSR) 00-4p at 2000 WL 189704 (stating that the occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT).

Most district courts in the Ninth Circuit that have confronted the issue have determined that "a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two." *Xiong*, 2010 WL 2902508, at * 6 (citing *Seechan v. Astrue*, No. 1:09-cv-00610-GSA, 2010 WL 1812637 (E.D. Cal. May 5, 2010); *Villafana v. Astrue*, No. 1:08-cv-01954-GSA, 2010 WL 1286818 (E.D. Cal. Mar. 29, 2010); *Racette v. Astrue*, No. 1:08-cv-01645-GSA, 2010 WL 1286786 (E.D. Cal. Mar. 29, 2010); *Stroda v. Astrue*, No. C09-5112BHS, 2010 WL 129814 (W.D. Wash. Jan. 11, 2010); *Erickson v. Astrue*, No. EDCV 09-484-OP, 2010 WL 129677 (C.D. Cal. Jan. 5, 2010); *Sorg v. Astrue*, No. C09-5063KLS, 2009 WL 4885184 (W.D. Wash. Dec. 16, 2009); *Vasquez v. Astrue*, No. CV 08-5305-OP, 2009 WL 3672519 (C.D. Cal. Oct. 30, 2009);

1   *Moua v. Astrue*, No. 2:07-cv-02024-GGH, 2009 WL 997104 (E.D. Cal. Apr. 14, 2009); *Angulo*
2   *v. Astrue*, No. 1:07-cv-0 1681-TAG, 2009 WL 817506 (E.D. Cal. Mar. 27, 2009); *Salazar v.*
3   *Astrue*, No. EDCV 07-00565-MAN, 2008 WL 4370056 (C.D. Cal. Sept. 23, 2008); *Isaac v.*
4   *Astrue*, CIV S-07-0442 GGH, 2008 WL 2875879 (E.D. Cal. July 24, 2008); *Squier v. Astrue*, No.
5   EDCV 06-1324-RC, 2008 WL 2537129 (C.D. Cal. June 24, 2008); *Howard v. Astrue*, EDCV 07-
6   1291 RNB, 2008 WL 3201221 (C.D. Cal. Aug. 7, 2008); *also citing Stubbs-Danielson v. Astrue*,
7   539 F.3d 1169, 1175-76 (9th Cir. 2008); *Fletcher v. Astrue*, No. CIVA509-CV-070-BG, 2010
8   WL 1644877 (N.D. Tex. Mar. 31, 2010); *Burnette v. Astrue*, No. 2:08-cv-009-FL, 2009 WL
9   863372 (E.D.N.C. Mar. 24, 2009)).

10      This conclusion has continued to be adopted by courts after *Xiong. See, e.g.*, *Baker v.*
11   *Comm'r of Soc. Sec.,* No. 1:13-cv-01350-SAB, 2014 WL 3615497, at * 7 (E.D. Cal. July 21,
12   2014); *Trujullo v. Colvin,* No. 3:13-cv-0620-SI, 2014 WL 2213218, at *5 (D. Or. May 27, 2014)
13   (recognizing that most courts in the circuit agree that a limitation to "simple, repetitive" tasks is
14   consistent with a job requiring reasoning levels one and two); *Mcgarrah v. Colvin*, No. 2:12-cv-
15   2296 AC, 2014 WL 710988, at * 9 (E.D. Cal. Feb. 21, 2014) ("Courts have consisten[tly] held
16   that a limitation requiring simple, repetitive tasks encompasses the reasoning level of 2" and
17   finding that the jobs identified by the VE were not in conflict with the mental health limitations
18   identified by the ALJ in the RFC, but finding that a specific limitation to "1-2 step instructions"
19   is compatible only with reasoning level one jobs); *Myers v. Colvin*, No. 1:12-cv-00378-LJO-
20   GSA, 2013 WL 3481689, at * 16 (E.D. Cal. July 10, 2013) (recognizing the same), *report and*
21   *recommendation adopted by* No. 12-cv-378 LJO GSA, 2013 WL 4400104 (E.D. Cal. Aug. 14,
22   2013); *Soto-Rojas v. Commissioner of Social Sec. Admin*., Civil No. 09-6218-KI, 2011 WL
23   39141, at *7-8 (D.Or. Jan. 6, 2011); *Hernandez v. Astrue*, NO. 1:09-cv-1805 SKO, 2010 WL
24   5113103, at * 4 (E.D. Cal. Dec. 9, 2010) (recognizing the same; stating: "[l]evel one reasoning
25   requires slightly less than simple tasks that are in some way repetitive").

26      In addition, most courts have held that a limitation to simple tasks is inconsistent with
27   DOT reasoning level 3. *See Baker*, 2014 WL 3615497 at * 7 (citing *Wright v. Astrue*, No. EDCV
28   10-400 SS, 2010 WL 4553441, at * 4 (C.D. Cal. Nov. 3, 2010) (and cases cited therein); *Torrez*

1    *v. Astrue*, No. 1:09-cv-006260JLT, 2010 WL 2555847, at * 9 (and cases cited therein).

2         Here, the GED reasoning level for both the surveillance system monitor job and

3    telephone quotation clerk job that the VE testified to are level 3. Plaintiff was assessed with

4    being able to perform simple tasks. According to the weight of authority in this district, there was

5    a conflict between Plaintiff's assessed limitations and the reasoning level assigned to the jobs the

6    VE testified he could perform.

7         The Commissioner relies on *Bordbar v. Astrue* to support the argument that the ALJ can

8    rely on VE testimony when a claimant is limited to simple work and the job identified by the VE

9    has a reasoning level of 3 under the DOT. (Docs/ # 15/16 at 6.) In *Bordbar*, in contrast to this

10   case, the plaintiff's medical providers found the plaintiff was able to perform "detailed and

11   complex" instructions. *Bordbar*, 2011 WL 486540 at * 3. Here, none of Plaintiff's providers ever

12   opined he was capable of anything more than performing simple tasks. In fact, Dr. Wildman

13   stated that Plaintiff was "*potentially* capable of understanding, remembering and carrying out a

14   *limited array* of *simple* instructions." (AR 291, emphasis added.) The State agency psychological

15   consultants likewise concluded Plaintiff was capable of simple tasks on a sustained basis.

16   Relying on these opinions, the ALJ assessed Plaintiff as able to carry out "no more than simple,

17   routine, repetitive tasks." (AR 23.)

18        First, the ALJ did not ask the VE whether a conflict existed between the testimony as was

19   her duty. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). This was in error.

20   Second, in the face of an apparent conflict, the ALJ must resolve it by obtaining an explanation

21   from the VE, determining whether it is reasonable, and providing a basis for relying on the VE

22   testimony rather than the DOT. The ALJ erred because she did none of these things.

23        Therefore, the court finds the ALJ erred in determining Plaintiff could perform work as a

24   surveillance system monitor or telephone quotation clerk at step five.

25   **D. Did the ALJ Give Legally Sufficient Reasons for Rejecting Portions of Dr. Wildman's**

26   **Opinions?**

27        Plaintiff contends that the ALJ impermissibly rejected a portion of Dr. Wildman's opinion

28   without setting forth legally sufficient reasons for doing so. (Doc. # 11 at 15-16.) Specifically,

Plaintiff contends that Dr. Wildman opined that Plaintiff was "potentially capable of understanding, remembering and carrying out a limited array of simple instructions" and was "moderately impaired" in terms of maintaining concentration and attention, but the ALJ only limited Plaintiff by stating he was capable of "understanding, remembering, and carrying out no more than simple, routine, repetitive tasks." The ALJ did not include the greater limitation that Plaintiff was only "potentially" capable of understanding, remembering and carrying out a "limited array" of simple instructions, and failed to address Dr. Wildman's assessment that Plaintiff had a moderate impairment in the ability to maintain concentration and attention.

The Commissioner argues that substantial evidence, including treatment records and various medical sources' opinions and findings support the ALJ's conclusion that mentally, Plaintiff had the RFC to understand, remember, and carry out simple, routine and repetitive tasks. (Docs. # 15/16 at 9.) The Commissioner points out that Plaintiff had no psychiatric treatment, and Dr. Wildman noted that while Plaintiff's test scores indicated mild retardation, it was likely in the upper range due to Plaintiff's lack of effort. (*Id.*) The Commissioner notes Dr. Wildman's other findings, including Plaintiff's cognitive function testing results. (*Id.*) Next, the Commissioner states that the ALJ reasonably discounted Plaintiff's low IQ and interpreted Dr. Wildman's report as indicating Plaintiff could perform simple, routine, repetitive tasks. (*Id.* at 10.)  The Commissioner also asserts that the ALJ properly considered and found consistent the opinions of State agency consultative psychologists that Plaintiff could perform simple tasks on a sustained basis with no limitation on interacting with others. (*Id.*)

The Commissioner alternatively contends that the ALJ permissibly rejected a portion of Dr. Wildman's opinion by adopting the conclusions of the State agency consultative psychologists. (*Id.*)

Plaintiff is correct that while the ALJ stated she was giving "significant weight" to Dr. Wildman's opinions, she did not limit Plaintiff's ability to understand, remember and carry out instructions to the extent Dr. Wildman did and did not mention the moderate limitation on his ability to maintain attention and concentration. Instead, the ALJ found Plaintiff was merely limited to understanding, remembering, and carrying out no more than simple, routine, repetitive

1    tasks. The ALJ did not cite any specific reasons for rejecting these portions of Dr. Wildman's

2    opinions. Contrary to the Commissioner's assertion, she did not state that she was adopting the

3    opinions of the State agency psychological consultants over those of Dr. Wildman.

4        All medical opinions are to be evaluated by the ALJ. 20 C.F.R. § 404.1527(c). "'In

5    disability benefits cases...physicians may render medical, clinical opinions, or they may render

6    opinions on the ultimate issue of disability—the claimant's ability to perform work.'" *Garrison*,

7    --- F.3d---, 2014 WL 3397218, at * 13 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

8    1998)). The court "'distinguish[es] among the opinions of three types of physicians: (1) those

9    who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

10   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

11   physicians).'" *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Treating

12   physicians' opinions are generally given more weight than examining or non-examining

13   physicians. *Id*. In addition, "the opinion of an examining physician is entitled to greater weight

14   than that of a non-examining physician." *Id*. (citing *Ryan*, 528 F.3d at 1198). "The weight

15   afforded a non-examining physician's testimony depends on the degree to which [he or she]

16   provide[s] supporting explanations for [his or her] opinions." *Id*. (internal quotation marks

17   omitted).

18       "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion,

19   an ALJ may only reject it by providing specific and legitimate reasons that are supported by

20   substantial evidence.'" *Garrison*, ---F.3d---, 2014 WL 3397218, at * 14 (quoting *Ryan*, 528 F.3d

21   at 1198). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the

22   facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making

23   findings.'" *Magallanes,* 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.

24   1986)). "The ALJ must do more than state conclusions. He must set forth his own interpretations

25   and explain why they, rather than the doctors', are correct.'" *Garrison*, ---F.3d---, 2014 WL

26   3397218, at * 14 (quoting *Reddick*, 157 F.3d at 725).

27       "Where an ALJ does not explicitly reject a medical opinion or set forth specific,

28   legitimate reasons for crediting one medical opinion over another, he errs." *Id*. (citing *Nguyen v.*

1    *Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). "In other words, an ALJ errs when he rejects a

2    medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting

3    without explanation that another medical opinion is more persuasive, or criticizing it with

4    boilerplate language that fails to offer a substantive basis for his conclusion." *Id*.

5         Here, the ALJ merely stated that the State agency psychological consultants concluded

6    Plaintiff was capable of simple tasks on a sustained basis with no limitations with interacting

7    with others. (AR 26.) She gave these opinions "significant weight," finding they were internally

8    supported by the consultative examination and were generally consistent with the overall

9    evidence including Plaintiff's self-reports of daily functioning. (AR 26.) As Plaintiff points out,

10   however, the State agency psychological consultant's findings were based entirely on their

11   review of Dr. Wildman's examination and opinions as Dr. Wildman was the only provider to

12   examine and assess Plaintiff's mental condition. Therefore, to the extent the Commissioner

13   argues that the ALJ was adopting the less stringent limitations of the State agency consultants

14   over Dr. Wildman's, this is not supported by substantial evidence in the record. The ALJ did not

15   identify specific and legitimate reasons supported by substantial evidence in the record when she

16   adopted a mental RFC determination that did not contain the extent of the limitations assessed by

17   Dr. Wildman. Therefore, the ALJ erred.

18   **E. Did the ALJ Err in Not Allowing Plaintiff's Legal Representative to Complete his Cross-**

19   **Examination of the VE Regarding the Source of the Jobs the VE Determined Plaintiff**

20   **Could Perform in the National Economy?**

21        Plaintiff contends that at the hearing his counsel attempted to question the VE regarding

22   the source of the jobs identified at step five of the sequential evaluation process, and the ALJ

23   denied that request. (Doc. # 11 at 16.) Plaintiff asserts that the VE testified that she derived her

24   numbers for the jobs available in the national economy from OccuBrowse and SkillTRAN, and

25   the Social Security Administration has not taken judicial notice of the reliability of these sources.

26   (*Id*. at 17.) Plaintiff argues that it was an abuse of discretion for the ALJ to deny Plaintiff's

27   counsel the opportunity to cross-examine the VE on this topic. (*Id*.)

28        The Commissioner argues that the ALJ properly exercised her discretion by limiting

Plaintiff's cross-examination of the VE. (Docs. # 15/16 at 11.) The Commissioner contends Plaintiff has not proven how further VE testimony describing the methodology behind calculating the number of existing jobs would be crucial to the ALJ's decision. (*Id*.) The Commissioner points to a Second Circuit case, *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 446 (2nd Cir. 2012), where the plaintiff argued that the ALJ erred by relying on VE testimony that the plaintiff did not think was reliable. *Id*. The Commissioner argues that substantial evidence supported the ALJ's decision, and even though Plaintiff may not be comfortable with the VE's sources, the ALJ was not required to accept Plaintiff's argument where substantial evidence otherwise supported her decision. (*Id*. at 12.) The Commissioner also contends that the VE's expertise provides the foundation for his or her testimony and Plaintiff did not object to the VE's qualifications or experience. (*Id*. at 11-12.)

In his reply, Plaintiff contends that he did not object to the qualifications or expertise of the VE, but the VE was not basing her testimony regarding the number of jobs available on her qualifications or expertise, but instead on computer programs—OccuBrowse and SkillTRAN. (Doc. # 17 at 8.) Plaintiff maintains that these programs have not been identified by the Social Security Administration as accepted sources. (*Id*. at 9.) Plaintiff reiterates that he should have been able to complete his examination of the VE regarding her methodology. (*Id*.)

The parties agree that "[a] claimant in a disability hearing is not entitled to unlimited cross-examination." *Solis v. Schweiker*, 719 F.3d 301, 302 (9th Cir. 1983). Instead, the claimant is only entitled to "'such cross-examination as may be required for a full and true disclosure of the facts.'" *Id*. (quoting 5 U.S.C. § 556(d)). "The ALJ ... has discretion to decide when cross-examination is warranted." *Id*.

> The relevant portion of the transcript reads as follows:
> Q. Okay. Thank you. The numbers that you derived -- what type of software do you use to derive those numbers?
> A. I use the actual -- I use OccBrowse and SkillTRAN.
> Q. Do you know if in the OccuBrowse or SkillTRANS [sic] program that they make number adjustments for either part-time or seasonal work?
> A. Yes, I'm aware of that, Counsel.
> Q. Do they, or do they not?
> A. They make mention of it, but I make a -- I, I erode the numbers based on individual -- the individual situation.
> Q. Okay. So you do your own erosion as, as part of your calculation?
> A. Yes, I do.

Q. Okay. And the OccuBrowse and -- I'm sorry, I forgot the name of the other one.

A. SkillTRAN

Q. SkillTRANS [sic] -- do you know what studies or what, what sampling they base their calculation of jobs on?

A. They base their job -- their numbers on the occupational employment surveys, which are updated yearly, and the BLS, Bureau of Labor Statistics.

Q. Okay. And the occupational employment surveys, who does those?

A. The -- I, I-- the Bureau of Labor Statistics consolidate them.

ATTY: Okay.

ALJ: Okay, Counsel. Finish up, please.

ATTY: And the Bureau of Labor Statistics, do you know whether they have a margin of error plus or minus from their surveys?

ALJ: Counsel, again, of what value -- we're talking about a significant number of, of jobs, okay?

ATTY: Well, Your Honor, I don't know that we are. I know that we -- we're talking about a DOT number that has been put into a computer.

ALJ: We're talking about -- the issue is, do a significant number of jobs exist, okay? And by anybody's standards with the jobs that this particular person has listed, I don't doubt that nationally there are a significant number of jobs.

ATTY: Okay.

ALJ: All right? Surveillance system monitor, quotation clerk, telephone quotation work -- you know that. I know that. So let's move on, please.

ATTY: Actually, Your Honor, I do not know that. What I'm trying to establish --

ALJ: Well, I'll, well, well, I'll tell you.

ATTY: -- is where the numbers come from.

ALJ: I'll tell you a significant number of jobs exist. So now you know it.

ATTY: Okay, so --

ALJ: Okay?

ATTY: --if I'm correct, on the record, you're telling me you don't want me to go farther into my inquiry with the --

ALJ: I, I, I think that your inquiry is, is not necessary in this particular situation, okay? I think that you can acquaint yourself with all of this stuff if you choose to do that, but at this particular point in time, the issue is, do a significant number of jobs exist? Okay? She has given the number of jobs that, as I said -- surveillance system monitor, do you have any doubt that there are a significant number of those in the national environment?

ATTY: I, I do, Your Honor. We'll start with that particular job title.

ALJ: Okay. I don't have any doubt of it. I would find that there's -- that there are a significant surveillance system monitors and also telephone quotation clerks, so please finish your, your questioning so that we can proceed, okay?

(AR 68-71.)

The Commissioner relies on a case from the Second Circuit where the plaintiff stipulated to the VE's expertise but then asserted a "*Daubert*-like objection to the VE's actual testimony, contending it was unreliable." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2nd Cir. 2012).[5] In *Brault*, the VE identified various jobs that the plaintiff could perform, and then turned

---

[5] The Second Circuit noted that *Daubert* does not in fact apply in Social Security administrative proceedings. *Brault*, 683 F.3d at n. 2.

- 24 -

to the Occupational Employment Quarterly II (QEQ) to assess whether positions existed in the national economy and in the Plaintiff's state of Vermont for each of the jobs identified. *Id*. There, the plaintiff appeared to argue that the report improperly counted part-time positions, and that the VE's testimony did not "reliably match the DOT codes to the QEQ data." *Id*. Citing further data that the numbers did not match up, the plaintiff argued that the underlying numbers were "unscientific and fail[ed] to meet the *Daubert* standard for reliability." *Id*. The plaintiff's counsel addressed these points while cross-examining the VE. *Id*. at 447. The VE acknowledged the objections, and gave an explanation for his numbers. *Id*. Plaintiff's counsel submitted additional briefing setting forth his objections, with the ALJ's permission. *Id*. The ALJ did not directly respond to the objections, but issued a ruling relying on the VE's testimony. *Id*. The ALJ found that positions existed for the jobs identified by the VE, and denied the application for benefits. *Id*.

The district court rejected the plaintiff's challenge as to the reliability of the VE's testimony, finding it was appropriate for the VE to consult the QEQ. *Id*. On appeal, the plaintiff argued that the ALJ should have addressed the objections and given and explanation for rejecting the plaintiff's theory. *Id*. at 448. The Second Circuit disagreed, finding that "[a]n ALJ does not have to state on the record every reason justifying a decision." *Id*. The Second Circuit also rejected the plaintiff's argument that the ALJ had to inquire into the objection challenging the reliability of the VE's testimony. *Id*. The Second Circuit noted that the Seventh Circuit has required that if the basis for a VE's conclusions are questioned, the ALJ should make inquiry to determine whether the conclusions are reliable. *Id*. (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). The Second Circuit declined to adopt the rule followed in the Seventh Circuit, noting that it was the only circuit to do so. *Id*.

As the Commissioner and the Second Circuit pointed out, the Ninth Circuit has also rejected such a rule, instead finding that "[a] VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *see Brault*, 683 F.3d at 448 (quoting the same). As *Brault* pointed out, the Federal Rules of Evidence do not apply in Social Security

1    proceedings. *Brault*, 683 F.3d at 448 (citing 42 U.S.C. § 405; *Richardson v. Perales*, 402 U.S.

2    389, 400-01).

3           Here, Plaintiff was permitted to question the VE about the source of her data. While the

4    ALJ precluded counsel from continuing on with the same line of questioning, Plaintiff concedes

5    that the computer programs identified by the VE rely on numbers from accepted sources, and the

6    VE, in turn, relied on them. (Doc. # 17 at 9.) Plaintiff asserts no further argument to indicate that

7    the VE's methods were unreliable. Nor did Plaintiff object to the VE's expertise at the hearing.

8    Finally, other district courts have held that an ALJ is entitled to rely on the VE's testimony

9    regarding the number of jobs available in the economy. *See Merryflorian v. Astrue*, No. 12-CV-

10   2493-IEG (DHB), 2013 WL 4783069, at * 6 (S.D. Cal. Sept. 6, 2013) (citing *Bayliss*, 427 F.3d at

11   1218)).

12          Accordingly, the court does not find that the ALJ erred in not allowing Plaintiff's counsel

13   to proceed with the questioning about the VE's methods.

14   **IV. CONCLUSION**

15          After carefully reviewing the record as a whole, the district court should find that the ALJ

16   erred in failing to ask the VE whether there was a conflict between the evidence provided by the

17   VE and the DOT, and resolve any conflict by eliciting an explanation from the VE and

18   determining whether it was reasonable and providing a basis for relying on the VE's testimony

19   rather than the DOT. The district court should also find that the ALJ erred in failing to set forth

20   legitimate and specific reasons for rejecting portions of Dr. Wildman's opinions. The district

21   court should find, however, that the ALJ did not err in precluding Plaintiff from continuing to

22   cross-examine the VE regarding her methods.

23          The court must now address whether the case should be remanded to the ALJ for further

24   proceedings or whether it should be remanded to the ALJ for the award of benefits. "Usually,

25   '[i]f additional proceedings can remedy defects in the original administrative proceeding, a social

26   security case should be remanded.'" *Garrison*, --- F.3d ---, 2014 WL 3397218, at *19 (quoting

27   *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). "[C]ourts are empowered to affirm,

28   modify, or reverse a decision by the Commissioner, with *or without* remanding the cause for a

1  rehearing.'" *Id.* (quoting 42 U.S.C. § 405(g)) (emphasis original in opinion). In appropriate cases,

2  the court may remand to the ALJ with instructions to award benefits. *Id.* (citations omitted).

3  Here, the court recommends that the matter be remanded to the ALJ to develop the record

4  in order to resolve the conflict between the VE testimony and the DOT and to set forth legally

5  sufficient reasons for rejecting portions of Dr. Wildman's opinions. Because the record needs to

6  be developed further, it is not clear from the record that the ALJ would be required to award

7  benefits if Dr. Wildman's opinions were fully credited. Therefore, it is not an appropriate case to

8  remand for the automatic payment of benefits. *See Garrison*, --- F.3d ---, 2014 WL 3397218, at

9  *19-20.

10 **V. RECOMMENDATION**

11 **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand/Reversal be

12 **GRANTED**, and the Commissioner's Cross-Motion for Summary Judgment (Doc. # 16) be

13 **DENIED**, and that the case be **REMANDED** to the ALJ for development of the record and

14 further administrative proceedings.

15 The parties should be aware of the following:

16 1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

17 Rules of Practice, specific written objections to this Report and Recommendation within fourteen

18 days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

19 Recommendation" and should be accompanied by points and authorities for consideration by the

20 District Court.

21 2. That this Report and Recommendation is not an appealable order and that any notice of

22 appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

23 until entry of the District Court's judgment.

24

25 DATED: August 5, 2014

26 _____
   WILLIAM G. COBB

27 UNITED STATES MAGISTRATE JUDGE

28

- 27 -